## KIGHT v. GASKIN.

1. Where there is mutual mistake, equity will reform a written instrument to make it conform to the intention of the parties. The petition was not subject to general demurrer.
2. The petition sufficiently set forth how the alleged mutual mistake occurred and what brought it about, and was therefore not subject to the special demurrer urged against it.
3. The charge, taken as a whole, fairly instructed the jury on the law applicable to the issues in the case, and the exceptions to certain portions of it were not meritorious when considered in the light of the whole charge.
4. The evidence authorized the verdict, and the court did not err in refusing a new trial.

FEBRUARY 11, 1913.

Equitable petition. Before Judge Parker. Coffee superior court. October 12, 1911.

Daniel Gaskin Sr. brought an action against Matthew M. Kight for the reformation of a deed and for injunction. It appears from the petition, that at some time prior to February 15, 1909, the plaintiff sold to the defendant a certain described parcel of land, reserving the timber thereon of stated dimensions. At the time of sale it was expressly agreed between plaintiff and defendant that such timber was not included in the sale, and that defendant was purchasing the land only. A bond was executed and delivered by plaintiff to defendant, wherein it was expressly stipulated that plaintiff, when the conditions of the bond should be complied with, would convey to defendant the land and that the timber thereon of given dimensions should be excepted or reserved. The petition contains the following allegations:

"3. It was clearly understood and agreed by and between petitioner and defendant that said timber was excepted and did not pass under said sale of the land in question, and was not purchased by said defendant.

"4. On or about the said 15th day of February, 1909, a deed was sought to be drawn and executed, conveying the aforesaid land, with said timber excepted, by this petitioner to said defendant, in terms of the contract and agreement theretofore entered into and agreed upon by and between these parties.

"5. By accident or mistake, however, the deed was so drawn as not to except the timber aforesaid, as should have been done, the land simply being described with the clause excepting the said

timber being inadvertently omitted, and said deed thus failing to describe and embrace the property really sold by petitioner to defendant in accordance with the terms of purchase agreed upon.

"6. This deed was signed at night, and the mistake aforesaid was not discovered until after it had been signed and delivered.

"7. The mistake was a mutual one, as there was no misunderstanding between the parties to said trade as to the exact estate purchased and to be conveyed by said deed,—that is, the land with the timber aforesaid excepted. . .

"9. Notwithstanding the fact that said timber was included in said deed—or was not excepted therein—by inadvertence, accident, and mistake, the said defendant is now endeavoring to claim title to the said timber which was not purchased by him, and which should have been excepted from the operation of said deed, and, contrary to good conscience, law, and equity, is endeavoring to assert ownership of said timber, and is threatening to cut, sell, and dispose of said timber, which does not belong to him but which belongs to this petitioner, and announces his present purpose and intention of cutting, selling, or otherwise disposing of all of said timber, to the great injury and damage of petitioner. . .

"12. Said deed should be reformed so as to speak the truth and carry out the contract of the parties thereto, and describe the property as actually bought by defendant from petitioner as aforesaid, to wit, the land in question with the timber aforesaid excepted from its operation."

The petition was amended by adding the following: "In view of the fact that the said Matthew M. Kight held petitioner's bond for title to make to him, when the terms of the bond should be complied with, a deed to the land in question with the said timber excepted by and reserved to petitioner, this petitioner had every reason to believe that the bond was being followed in the drawing of the deed; and knowing that the said bond correctly described the property sold by petitioner to said Kight, petitioner had every reason to believe that the deed had been correctly drawn, with the said timber excepted and reserved, and did not notice the mistake in it until after it had been delivered. Petitioner's recollection is that the deed was signed at night, but, be that as it may, there had never been any question about the timber and there was nothing to put petitioner on notice that any mistake concerning it could pos-

sibly be made in the deed, in view of the outstanding bond and the plain understanding and agreement between the parties to the trade consummated in the contract by which defendant purchased said land •from petitioner with the said timber excepted and reserved. In view of all this, petitioner did not examine the deed as closely as he might under other circumstances, and the mistake was not discovered until later."

The defendant demurred generally and specially to the petition. The special demurrer was as follows: "The defendant demurs to paragraph five of said petition, because it is not alleged therein where, how, or in what manner the mistake or accident occurred and happened; neither is it alleged in said petition or elsewhere what caused or brought about the alleged mistake and accident. Defendant demurs to paragraph six of plaintiff's petition, because it is not alleged therein, or elsewhere in said petition, why that the signing of the said instrument at night caused or brought about the alleged mistake, neither is it alleged therein or elsewhere what was the length of time which expired after the alleged mistake and after the execution of the instrument before the discovery of the alleged mistake by plaintiff. Defendant demurs to the eighth paragraph and says that same sets out no cause of action, because it is not alleged therein whether the alleged mistake or accident was a mistake of the scrivener, or of the plaintiff, or of the defendant, or of all; neither is it alleged whether the scrivener refused to follow instructions of plaintiff and defendant in drawing said instrument; neither is it alleged wherein, why, or in what manner the said alleged mistake was brought about, caused, or happened." The demurrers were overruled. A verdict was rendered in favor of the plaintiff. Defendant was refused a new trial. He excepted, assigning error upon the overruling of the demurrers and of the motion for new trial.

*Lankford & Moore,* for plaintiff in error.

*F. Willis Dart,* contra.

Fish, C. J. (After stating the foregoing facts.)

1. Equity will reform a written contract so as to make it speak the truth—what the parties really intended—in a case of mistake by both parties. Civil Code, § 4579. This rule has been recognized by this court from the early case of *Rogers* v. *Atkinson,* 1. *Ga.* 12, to the recent case of *Fambrough* v. *DeVane,* 138 *Ga.* 47 (74 S. E.

762). It is unnecessary to cite the numerous cases where the rule has been followed. Among them the following cases will be found closely in point when applied to the allegations•of fact as stated in the petition in the case at bar: *Trout* v. *Goodman,* 7 *Ga.* 383; *Wall* v. *Arrington,* 13 *Ga.* 88; *Wardlaw* v. *Mayer,* 77 *Ga.* 621; *Phillips* v. *Roquemore,* 96 *Ga.* 719 (23 S. E. 855); *Kitchens* v. *Usry,* 121 *Ga.* 294 (48 S. E. 945); *Long* v. *Gilbert,* 133 *Ga.* 693 (66 S. E. 894). No mutual mistake was involved in the cases relied on by counsel for plaintiff in error, viz.: *Thompson* v. *Ins. Co.,* 90 *Ga.* 78 (15 S. E. 652); *Jossey* v. *Georgia Southern Railway Company,* 109 *Ga.* 445 (34 S. E. 664); *Weaver* v. *Roberson,* 134 *Ga.* 149 (67 S. E. 662). Under the above-stated rule, the petition in the present case was not subject to general demurrer.

2. The only grounds of special demurrer that need be specifically dealt with are that the 5th paragraph of the petition does not allege "where, how, or in what manner the mistake or accident occurred or happened; neither is it alleged in said petition or elsewhere what caused or brought about the alleged mistake and accident;" and that it is not alleged in the 8th paragraph "whether the alleged mistake or accident was a mistake of the scrivener, or of the plaintiff, or of the defendant, or of all; neither is it alleged whether the scrivener refused to follow instructions of plaintiff and defendant in drawing said instrument; neither is it alleged wherein, why, or in what manner the said alleged mistake was brought about, caused, or happened." "A bill or complaint in a suit to reform a written instrument must clearly and distinctly state what was the contract or agreement between the parties, and show what part of the contract was omitted to be reduced to writing, or what portion of the contract as it was expressed in writing was not embraced in the original contract. The plaintiff's allegations must show in terms what the tenor of the instrument ought to be to express the contract which by mistake there was failure to execute. It is not sufficient to allege that it was the intention of the parties to make an instrument that would accomplish a certain object, and ask the court to make a writing that will accomplish that object. The bill or complaint should set out the transaction as it occurred, and not the legal effect thereof; however, allegations which specifically set out the intended contract and the mistake in reducing it to writing are sufficient." 18 Enc. Pl. & Pr. 824, 825.

"The instrument which is sought to be reformed should be set forth in the bill, so that from it and the allegations in the bill of complaint it may clearly appear that it does not conform to the real contract made by the parties. The bill should also show the particular mistake or the fraud and mistake complained of, and how it occurred; what the real contract was; how it differed from the contract that was executed, and the injury that resulted to the complainant therefrom." Van Zile on Equity Pl. & Pr. § 419. The petition in the present case fully complied with all of the requirements set forth in the above quotations, except, as contended by counsel for plaintiff in error, it was not alleged how the mistake occurred or what caused or brought it about. The allegations specifically set out the intended contract and the mistake in reducing it to writing, and, as stated in the foregoing quotation from the Enc. Pl. & Pr., were sufficient. See Walls v. State ex rel. Mallott, 140 Ind. 16 (38 N. E. 177); Rousseau v. Lambert (Ky.), 7 S. W. 923. Counsel for plaintiff in error however rely, in support of the special demurrer under consideration, upon the ruling announced in Delaware Ins. Co. v. Pennsylvania Ins. Co., 126 Ga. 380 (55 S. E. 330, 7 Ann. Cas. 1134). It was there held, that "where a proceeding is brought for the purpose of reforming a written contract, the instrument which is sought to be reformed should be set forth in the petition, or attached thereto as an exhibit, so that from it and the allegations it may clearly appear that it does not conform to the real contract made by the parties. The petition should also show the particular mistake, or the fraud and mistake complained of, and how it occurred." In that case the plaintiff sought to have a written contract of reinsurance reformed upon the theory that it did not contain the real contract intended to be expressed therein by the parties, in that the term for the reinsurance as expressed in the written instrument was for one year, whereas the parties mutually intended that the term should be for three years. In the opinion Justice Lumpkin used the following language: "It was alleged . . that by error of the scrivener who drew up the writing evidencing the contract, the contract was written as one year instead of three years. But it was not alleged that the defendant knew what rate was charged for the original insurance, or that it received the premium as being for three years insurance; or that the parties ever agreed or intended that the

contract should be so written, or instructed the scrivener to that effect; or how the alleged mistake came to be made; or why the plaintiff failed to know the terms of its contract until it had expired. The allegations of the petition were insufficient for the purpose of reformation, and were demurrable." In the present case the allegations of the petition were to the effect that the original contract between the plaintiff and the defendant was that the former sold to the latter a described parcel of land, reserving the timber thereon of stated dimension; that both parties clearly understood that only the land was sold and that the timber was reserved by the plaintiff; that a bond for title was given by the plaintiff to the defendant wherein the real contract between the parties was correctly set forth, there being therein an express stipulation that the land only was to be conveyed, as the timber thereon, of described dimension, was reserved by the obligor; that subsequently a deed was drafted and executed for the purpose of conveying the land sold by the plaintiff to the defendant in accordance with the terms of the contract previously made between them, but by accident or mistake the timber was not excepted or reserved in the deed; that a clause excepting and reserving the timber was inadvertently omitted; that such omission was a mutual mistake, as there was no misunderstanding between the parties as to the contract or as to what the deed conveyed, that is, the land only with a reservation of the timber thereon; that in view of the fact that the defendant held the plaintiff's bond for title, obligating the plaintiff to make to him, when the terms of the bond should be complied with, a deed to the land in question, with the timber excepted and reserved to the plaintiff, he had reason to believe that the bond was being followed in the drafting of the deed, and believed that the deed had been correctly drawn in accordance with the bond. These allegations differentiate this case from the facts alleged in the case last above cited, and in our opinion sufficiently set forth how the alleged mutual mistake occurred and what caused or brought it about, and fully put the defendant on notice of all that he was required to answer. In *Jackson* v. *McCalla,* 133 *Ga.* 749 (66 S. E. 918), which was an equitable action for the reformation of two promissory notes payable to Mrs. M. A. McCalla individually by mistake, when they should have been made payable to her as the "executrix of J. W. McCalla," it appeared from the

record that the petition alleged that there had been a settlement between Mrs. McCalla "as the executrix of J. W. McCalla," and the defendant Jackson, as to his indebtedness to the estate of her testator, and in such settlement it was found that he was indebted to the estate in a given amount, for which amount he executed his two promissory notes, and "that by inadvertence and mistake in drawing the notes they were made payable to Mrs. M. A. McCalla, to whom said Jackson owed nothing, and they should have been made payable to Mrs. M. A. McCalla, executrix of J. W. McCalla, and that the omission of the words 'executrix of J. W. McCalla,' was purely a mistake." One of the grounds of special demurrer was that it failed to allege "in what way it [the mistake] arose." It was held: "The petition was not subject to general or special demurrer on any ground presented." The other ground of special demurrer is without merit.

3. As to the motion for new trial. We have carefully read all of the evidence in the record, as well as the charge of the court, and find that the respective contentions of both parties were fully and fairly stated to the jury, and that the law applicable thereto was correctly given in charge. The exceptions to excerpts from the charge present no questions that are not well settled. See the cases cited in the first division of this opinion, dealing with the general demurrer, and Civil Code, §§ 4570, 4579, and 4581, which sections were embodied in the charge. See also *Gabbett* v. *Hinman*, 137 *Ga.* 143 (72 S. E. 924). We deem it entirely unnecessary to deal specifically with the points made in the motion for new trial, and to merely reiterate well-settled principles of law.

4. The evidence authorized the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. Beck, J., absent. The other Justices concur.*